James H.M. Sprayregen, P.C.
Gregory S. Arovas, P.C.
Paul M. Basta, P.C.
Brian S. Lennon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

- and -

David R. Seligman P.C.
Marcus E. Sernel P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to Apple Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| EASTMAN KODAK COMPANY, *et al.*, | ) Case No. 12-10202 (ALG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**APPLE INC.'S MOTION TO WITHDRAW THE REFERENCE**
**WITH RESPECT TO KODAK'S MOTION FOR AN "ORDER IN AID OF**
**AN ASSET SALE PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE"**

Through a motion filed with the Bankruptcy Court presiding over its chapter 11 case, Eastman Kodak Company ("Kodak") is attempting to strip Apple Inc. ("Apple") of its rights under federal patent and state law in at least ten U.S. patents relating to technology developed by Apple, without allowing Apple any opportunity to establish its rights with respect to those patents through pleading, discovery, expert analysis, or evidentiary proceedings.   Although

Kodak purports to bring a routine motion "in aid" of a proposed asset sale, its motion is in fact a disguised declaratory judgment action—and simultaneously seeks a hasty summary adjudication of that action—regarding Apple's various rights, interests, and defenses relating to the patents in question.  Kodak seeks to have this rush to judgment occur in the Bankruptcy Court, which is neither legally permitted nor practically equipped to address the numerous complex points of federal patent law and related issues implicated by the parties' disputes.

In addition to significant procedural deficiencies that preclude consideration of Kodak's motion by the Bankruptcy Court, there are several reasons why the reference of this motion, and any related proceedings on the patent-related claims, should be withdrawn to the District Court. Mandatory withdrawal is required under 28 U.S.C. §157(d) because the issues implicated by Kodak's motion require consideration of complex issues of federal patent law.  For example, Apple's inventorship rights raise issues of federal patent law regarding conception, relative significance of technical features, and claim construction for at least ten patents.  These issues must be litigated through appropriate proceedings in the District Court; it would be reversible error if they were summarily disposed of in a matter of weeks through a Bankruptcy Court motion.

In the alternative, cause exists to support permissive withdrawal, particularly in view of the complexity of the issues, the prominence of non-bankruptcy law in the dispute, the limitations on the Bankruptcy Court's statutory and constitutional authority, and the history of litigation between the parties.  Indeed, litigation of several of the parties' patent-related disputes require a jury trial, which cannot be conducted by the Bankruptcy Court absent Apple's consent. Moreover, patent litigation between the parties, including certain of Apple's assertions regarding its rights in Kodak patents, has been pending for more than a year in the Western District of New

York, where Kodak filed patent infringement claims against Apple and previously insisted that these issues must be litigated (and the remaining causes of action would have been formally pled as well, but for stays that remain in place at Kodak's insistence).  No basis exists for Kodak to now reverse course and—in a thinly veiled attempt at forum shopping—drag an array of complex non-bankruptcy issues into Bankruptcy Court.

As described in more detail below, settled law requires the rejection of Kodak's gambit, because the questions at issue in Kodak's "motion" must be decided in the District Court. Accordingly, Apple respectfully requests that the Court withdraw the reference so that Apple is not deprived of its rights in technology that it developed, and owns, without the full and fair process to which it is entitled.

## I.    BACKGROUND

### A.    Apple Discloses Its Technology To Kodak

The ten patents at issue cover particular features for digital cameras.  (Exs. 1-10, Patents.) Apple originated the technology underlying these patents in the early 1990s in connection with its research and development work on a novel computerized digital camera.  (Ex. 11, 8/25/10, Apple Complaint, ¶ 12.)  To further develop and commercialize its technology, Apple sought help with camera hardware, such as lenses and image sensors.  (*Id.,* ¶ 15.)  Apple therefore collaborated with Kodak, with the goal of developing and commercializing Apple's innovative technology.

During the course of several years of collaboration, Apple made numerous disclosures to Kodak regarding Apple's technology for innovative digital camera features.  (*Id.,* ¶ 16-21.) These disclosures were protected by confidentiality agreements, as well as a contractual obligation for Kodak to disclose and irrevocably assign to Apple any patents relating to Apple's technology.  (*Id.,* ¶ 24-25.)

**B.      Kodak Patents Apple's Technology And Sues Apple**

Kodak terminated the parties' collaboration in mid-1996.  Unknown to Apple, Kodak had secretly been filing patent applications relating to technology that Apple disclosed to Kodak in the course of the parties' joint work.  (*Id.,* ¶ 23.)  These applications led to at least ten patents, in which Apple now asserts its rights.  Apple's assertion of rights and the ten patents to which these assertions relate are summarized in a letter provided to Kodak.  (Ex. 12, 3/16/12 Sernel Letter.)  Kodak's motion in the Bankruptcy Court seeks an "order" declaring that Apple has no interest in any patents issued to Kodak, including the ones discussed above that are based on Apple's technology.

As described in Kodak's motion, Kodak has sued numerous companies for allegedly infringing its patents, and has negotiated licensing agreements with many different parties since 2001.[1]  (Dkt. No. 1184, Motion at 2.)   In early 2010, Kodak accused Apple of patent infringement—including of the '218 patent—in actions filed with the U.S. District Court for the Western District of New York and the International Trade Commission ("ITC").  In the course of its internal investigations regarding Kodak's infringement claims, Apple discovered that the asserted patents, as well as numerous other Kodak patents, are based on technology that Apple had confidentially disclosed to Kodak many years earlier.  (Ex. 11, 8/25/10, Apple Complaint, ¶ 11.)

---

[1]      With the deterioration of its film and camera businesses, Kodak has increasingly relied on patent litigation as a source of income.  For example, in a recent "Business Segment Review" presentation available on its website, Kodak identifies "Intellectual Property" as a source of "Continued Income and Cash Generation" and says it earned $1.9 billion in patent-related revenue between 2008 and 2010.  (Ex. 13, Kodak Presentation at 31.)  As Kodak explained in its third-quarter earnings release last year, a goal of its intellectual property strategy is to "to generate income and cash" and "[i]n recent years, in keeping with that strategy, the company has actively monetized its intellectual property … as a way to fund its digital transformation."  (Ex. 14, 11/3/11 Kodak Press Release.)  Kodak, which announced on February 9, 2012 that it will soon stop making digital cameras, is instead using litigation to extract settlements and licensing fees from companies that *are* making them.  (Ex. 15, 2/9/12 Kodak Press Release.)

Apple subsequently sued Kodak in California in 2010, asserting several causes of action based on Kodak's misappropriation of Apple's technology and breach of the parties' contractual agreement. (*Id.*, ¶ 37-62.) Kodak moved to dismiss, or alternatively to transfer, on the grounds that disputes regarding Apple's rights to particular patents must be litigated in Kodak's previously-filed Western District of New York case. (Ex. 16, 11/15/10 Kodak Mot. at 3, 15-17.) Kodak prevailed on this issue and Apple's assertions were effectively transferred to the Western District of New York case. Apple also raised certain aspects of its assertion of rights in the '218 patent as defenses in the ITC.

The ITC conducted proceedings on Kodak's patent infringement claims and its rulings thus far have been overwhelmingly in Apple's favor. After a trial on the merits, Administrative Law Judge Luckern issued an Initial Determination on January 24, 2011 finding that: (1) Apple did not infringe the '218 patent, and (2) the '218 patent was invalid because it was obvious in view of the prior art. (Ex. 17, 1/24/11 Notice.) These rulings in Apple's favor rendered moot any need for the ITC to carefully consider defenses relating to Apple's rights in the '218 patent.[2]

The ITC subsequently reversed several of ALJ Luckern's underlying claim construction rulings, broadening the claims in certain respects. It also remanded to ALJ Pender (due to ALJ Luckern's retirement) for a determination of the impact of the new claim constructions on non-infringement and invalidity. On May 21, 2012, ALJ Pender issued an Initial Determination

---

[2]   The ITC did address Apple's separate assertion that Apple's digital camera work was anticipatory prior art to the '218 patent, and found that the presence of several claim limitations had not been established. The only mention in the ITC ruling of Apple's patent-related assertions is a cursory footnote statement that the contract-related assertion was not established. In any event, the ITC's analysis has no preclusive effect on a district court even if the issues were the same, which they are not. *See Texas Instruments Inc. v. Cypress Semiconductor Corp.,* 90 F.3d 1558, 1569 (Fed. Cir. 1996). Moreover, Apple's patent-related assertions do not require the same limitation-by-limitation matching that invalidity does. The other nine patents that Kodak wants the Bankruptcy Court to "declare" Apple's lack of interest in were not even at issue in the ITC proceeding.

confirming that: (1) Apple's current products do not infringe the '218 patent, and (2) the '218 patent is invalid.  (Ex. 18, 5/21/12 Notice.)

### C.   Kodak Attempts To Use A Bankruptcy Motion To Short-Circuit District Court Proceedings

In a motion filed on May 14, 2012, Kodak asked the Bankruptcy Court to "order" that Apple has "no interest" in the disputed patents, including the '218 patent as well as nine other patents that have never been substantively addressed in any prior litigation between Kodak and Apple, to assist Kodak in selling its patents.  (Dkt. No. 1184, Motion at 1.)  Kodak argues that the Bankruptcy Court "need not engage in long and complicated proceedings" to reject Apple's assertion of rights in these patents.  (*Id.* at 1, 5, 28.)  Kodak asserts that its motion should be granted quickly, so that it can file another motion requesting the approval of certain sale procedures on or before June 30, 2012.  (*Id.* 14.)  Although Kodak is seeking a judgment regarding Apple's interests in several patents, Kodak did not even file an adversary proceeding in the Bankruptcy Court.

Apple has done everything in its power to protect against a gambit like this.  On January 19, 2012, Apple objected to Kodak's debtor-in-possession financing to the extent it sought to impose liens on the patents in which Apple asserts rights.  (Dkt. No. 40.)  On February 14, 2012, Apple filed a motion to lift the automatic bankruptcy stay so that the parties' disputes regarding Apple's rights in Kodak patents could be litigated in the Western District of New York, where Kodak previously insisted that these issues should be litigated, or transferred to the Southern District of New York.  (Dkt. Nos. 344, 500.)  Apple argued that these issues would have to be addressed at some point and it would be best to address these issues immediately rather than waiting until a sale process was underway when Kodak would likely insist on litigating the issues on an unnecessarily accelerated pace in denial of Apple's due process rights.  Kodak

opposed this motion, arguing that it was premature.  (Dkt. No. 468.)  Although the Bankruptcy Court did not lift the stay, it directed that "some procedures should be agreed to by the parties for a quick resolution of the critical issues . . . without waiver of any jury trial right, without waiver of Apple's claim that these are issues that a district court judge would withdraw."  (Ex. 19, 3/8/12 Hr'g Tr. at 65:5-9.)  Despite Apple's efforts, Kodak has been unwilling to negotiate any such procedure that protects Apple's rights, as directed by the Bankruptcy Court.

Instead of working with Apple on an appropriate procedure, and after radio silence for approximately two months, Kodak filed a "motion"—nearly five months after entering bankruptcy and only six weeks before its deadline for filing a bidding procedures motion— asking the Bankruptcy Court to "order" that Apple lacks any rights in the disputed patents. Based on the timing of these events and the procedural mechanism of Kodak's request, Kodak's strategy is obvious: to deny Apple a full and fair opportunity to litigate these issues, to prevent a court of appropriate jurisdiction from carefully scrutinizing the parties' respective claims to the patents, and to eliminate Apple's right to trial by jury.[3]

## II.    LAW APPLICABLE TO THIS MOTION

### A.    Withdrawal Is Mandatory Where Non-Bankruptcy Federal Law Is At Issue

The District Court is required to withdraw a proceeding from the Bankruptcy Court "if the court determines that resolution of the proceeding requires consideration of both title 11 and

---

[3]   Indeed, during a prior Bankruptcy Court hearing, Apple's counsel previously exposed Kodak's strategy and predicted the course of events that have come to pass:

Your Honor knows and has seen it many times before, a debtor comes with a sales procedures motion, maybe has a stalking horse.  The deal's got to get done.  There's tremendous pressure to get the deal done and we don't want to be in a situation where we're in June and somebody says, you know, what this issue is a very important issue.  It's got to be decided.  You know, let's have a trial and we'll give you, you know, two days because that's all we have.

(Ex. 19, 3/8/12 Hr'g Tr. at 36:22-37:4.)

other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). Patent cases are often mandatorily withdrawn under section 157(d) because these cases typically involve complex issues of federal law. *In re Singer Co., N.V.,* No. 01 Civ. 0165 (WHP), 2002 WL 243779 (S.D.N.Y. Feb. 20, 2002) (dispute over sewing needle patent); *In re Nat'l Gypsum Co.,* 145 B.R. 539 (N.D. Tex. 1992) (dispute over patent on "lightweight joint compound"); *see also Weiss ex rel. Fibercore, Inc. v. OFS Fitel, LLC,* 361 B.R. 315, 317 (D. Mass. 2007) ("the predominance of federal law in the pending patent infringement action … strongly implicates non-core federal bankruptcy law, which the district court is best equipped to apply").

**B.      Withdrawal "For Cause" Is Common In Non-Core Cases**

Even where withdrawal is not mandatory, "[t]he district court may withdraw, in whole or in part, any case or proceeding … for cause shown." 28 U.S.C. § 157(d). This is known as "permissive withdrawal" and it is common in disputes that, while related to a bankruptcy, predate the debtor's bankruptcy filing and do not arise under bankruptcy law. Courts in the Second Circuit consider three factors to determine whether permissive withdrawal is warranted: (1) whether the proceeding is "core" or "non-core"; (2) whether the proceeding is legal or equitable; and (3) "considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law." *In re Orion Pictures Corp.,* 4 F.3d 1095, 1101 (2d Cir. 1993). The primary consideration is whether the proceeding is core or non-core, because conclusions about efficiency and judicial economy will often follow from there. *Id.* For example, because a bankruptcy court can only "submit proposed findings of fact and conclusions of law to the district court" in a non-core proceeding (28 U.S.C. § 157(c)(1)), it is often more

efficient to conduct a non-core proceeding entirely in the district court. *In re Orion,* 4 F.3d at 1101 ("unnecessary costs could be avoided by a single proceeding in the district court").[4]

A core proceeding is one that could only arise in a bankruptcy case. *In re Leco Ent., Inc.,* 144 B.R. 244, 249 (S.D.N.Y. 1992) (quoting *In re Wood,* 825 F.2d 90, 97 (5th Cir. 1987) ("If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding.")) "To be a core proceeding, an action must have as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment although of necessity there may be a peripheral state law involvement." *Acolyte Elec. Corp. v. City of New York,* 69 B.R. 155, 173 (Bankr. E.D.N.Y. 1986). Claims that "are independent of bankruptcy and involve facts wholly antecedent to the bankruptcy" are not core claims. *In re Fairfield Sentry Ltd. Litig.,* 458 B.R. 665, 685 (S.D.N.Y. 2011). Where a debtor "could have pursued the same claims … and continued about [its] ordinary business without ever having filed for bankruptcy," its claims are not core. *Id.* Similarly, "pre-petition common law actions for a claim requiring adjudication of factual disputes unrelated to the bankruptcy are not core claims." *Id.* at 688.

An action filed by the debtor before entering bankruptcy does not become "core" simply because a win for the debtor would increase the funds available to the estate or improve the debtor's chances of successfully reorganizing. *Acolyte Elec.,* 69 B.R. at 175; *see also In re*

---

[4]   While recent decisions in the Southern District have cast doubt on the primacy of the core/non-core distinction among the *Orion* factors (suggesting that after the Supreme Court's decision in *Stern v. Marshall,* 131 S.Ct. 2594 (2011) the key inquiry is whether the bankruptcy court has "final adjudicative authority" over the matter), this does not change the fact that non-core proceedings are often subject to withdrawal because, as these decisions recognize, "the bankruptcy court may not enter final judgment … on any non-core claims." *See, e.g., In re Lyondell Chemical Co.,* --- B.R. ----, 2012 WL 1038749 at *6, *9 (S.D.N.Y. March 29, 2012); *see also In re Extended Stay, Inc.,* 466 B.R. 188, 204 (S.D.N.Y. 2011) ("the core/non-core distinction is still a relevant consideration in permissive withdrawal analysis, except to the extent *Stern* holds that Congress's classification of a claim as 'core' exceeds the boundaries of Article III."). As discussed below, the effect of *Stern* is to expand the group of matters subject to permissive withdrawal, since even core matters may now be withdrawn if the district court determines that the bankruptcy court lacks final adjudicative authority over them.

*McCrory Corp.,* 160 B.R. 502, 506 (S.D.N.Y. 1993) (trademark dispute that "goes to the heart of the debtor's reorganization plans" was not core proceeding because "the dispute would exist independent of a bankruptcy environment").  "An action involving a debtor and a non-creditor in which 'the only relationship … to the bankruptcy proceeding [is] that determination of the action would affect the ultimate size of the estate' is not a core proceeding."  *Little Rest Twelve, Inc. v. Visan,* 458 B.R. 44, 55 (S.D.N.Y. 2011) (quoting *In re Best Prods. Co.,* 68 F.3d 26, 32 (2d Cir. 1995)).  In other words, a case is not a core proceeding just because it may be important to the debtor's reorganization.

### C.   Withdrawal Is Required Where The Bankruptcy Court Would Have To Adjudicate "Private Rights"

Because bankruptcy courts are not Article III courts, their decision making authority is limited by the Constitution and they may not "exercise jurisdiction over all matters related to those arising under the bankruptcy laws."  *Northern Pipeline Const. Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 76 (1982).  While bankruptcy courts may adjust debtor-creditor relationships as provided for under the bankruptcy code, they may not adjudicate "private rights" originating elsewhere in the law.  *Id.* at 71 ("the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages").

Among other things, state law contract and tort claims cannot be decided by a bankruptcy court.  *Id.* (breach of contract); *Stern v. Marshall,* 131 S.Ct. 2594 (2011) (tortious interference).  This is true even of statutory "core" proceedings, such as a counterclaim by the estate against a creditor that has filed a claim against the estate.  In *Stern,* the Supreme Court held that although the estate's counterclaim against a creditor for tortious interference was "a 'core proceeding' under the plain text of § 157(b)(2)(C)," the bankruptcy court could not rule on that claim because

it arose under non-bankruptcy law.  *Id.* at 2604, 2608.  "If the claim involves private rights, Congress cannot vest final adjudicative power over it in the Bankruptcy Court consistent with Article III, whether the claim is 'core' or 'non-core'."  *Development Specialists, Inc. v. Akin Gump Strauss Hauer & Feld, LLP,* 462 B.R. 457, 467 (S.D.N.Y. 2011).

Just as a proceeding is not "core" because it would add funds to the estate or smooth the debtor's path to reorganization, "the fact that the debtor's recovery would augment the estate [is] insufficient to convert the right being vindicated from private to public."  *In re Coudert Bros. LLP,* App. Case No. 11–2785 (CM), 2011 WL 5593147 at *7 (S.D.N.Y. Sept. 23, 2011).  The Supreme Court has held likewise.  *Northern Pipeline,* 458 U.S. at 72 ("Northern's right to recover contract damages to augment its estate is one of private right, that is, of the liability of one individual to another under the law as defined.") (quotation omitted); *see also Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 56 (1989) (contrasting "claims brought by a bankrupt corporation to augment the bankruptcy estate," which are matters of private right, with "creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res").  Thus, under both the pre-*Stern* rubric of core and non-core proceedings and the post-*Stern* rubric of public and private rights, the rule is the same—the bankruptcy court does not have authority to rule on a matter simply because the outcome is important to the debtor's reorganization.

### D.      Withdrawal Is Warranted Where A Jury Trial Is Required

Bankruptcy courts cannot conduct jury trials without the consent of both parties.  28 U.S.C. 157(e); *In re Orion,* 4 F.3d at 1101 ("the constitution prohibits bankruptcy courts from holding jury trials in non-core matters");  *In re Extended Stay,* 466 B.R. at 197 ("Even if the proceeding is determined to be core in nature and a jury trial is demanded, a bankruptcy court may only conduct a jury trial if 'specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.'"); *see also Granfinanciera,* 492 U.S. at 42

("Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency or a specialized court of equity.").  Apple has not consented to a jury trial in the Bankruptcy Court.

Whether a jury trial right exists depends largely on whether the claim is legal or equitable in nature.  *Granfinanciera,* 492 U.S. at 42.  For example, a breach of contract claim seeking money damages is inherently legal.  *Brown v. Sandimo Materials*, 250 F.3d 120, 126 (2d Cir. 2001) ("[A] claim for breach of contract ... has historically been uniformly treated as a legal claim.");  *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477 (1962) ("we think it plain that [plaintiff's] claim for a money judgment is a claim wholly legal in its nature however the complaint is construed").  And this right to trial by jury applies equally in patent litigation— indeed, where both legal and equitable claims are present in a patent dispute, the right to trial by jury applies to both of them.  *See, e.g., Shum v. Intel,* 499 F.3d 1272, 1279 (Fed. Cir. 2007) (plaintiff was entitled to jury determination of inventorship in patent dispute, given factual overlap with fraud claim);  *Cabinet Vision v. Cabnetware,* 129 F.3d 595, 600 (Fed. Cir. 1997) (jury's fact findings on legal claim were binding on judge in related equitable claim).  Further, when conducting the analysis, "all doubts must be resolved in favor the party seeking a jury trial."  *Design Strategies, Inc. v. Davis,* 367 F. Supp. 2d 630, 638 (S.D.N.Y. 2005).

## III.   ARGUMENT

The parties' disputes raise complex issues of federal patent law, have no substantive relationship to Kodak's bankruptcy proceeding, and implicate a right to trial by jury.  A bankruptcy court is neither legally permitted nor practically equipped to resolve these disputes—

particularly in the form of a hasty ruling on a motion, as proposed by Kodak.  Under well-settled law, the reference of this dispute must be withdrawn.[5]

### A.   This Case Involves Complex Issues Of Non-Bankruptcy Federal Law Triggering Mandatory Withdrawal

Withdrawal is mandatory in this case because the issues raised by Kodak's motion require consideration of complex issues of federal patent law.  28 U.S.C. § 157(d) (withdrawal is required "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce"); *In re Singer,* 2002 WL 243779; *In re Nat'l Gypsum,* 145 B.R. 539; *Weiss ex rel. Fibercore,* 361 B.R. at 317.  For example, Apple plans to seek correction of inventorship pursuant to section 256 of the federal patent statute (in addition to assertions under state law).[6] 35 U.S.C. § 256.  Under federal patent law, a person is an inventor "if he contributes to the conception of the claimed invention."  *Eli Lilly and Co. v. Aradigm Corp.,* 376 F.3d 1352, 1358-59 (Fed. Cir. 2004).  While Apple believes the evidence in this case easily meets this standard, Kodak's arguments to the contrary will likely implicate complex issues of patent law.  Indeed,

---

[5]   Nor does the Bankruptcy Court have authority to address these issues under Section 105 of the Bankruptcy Code, which is invoked by Kodak's motion.  As the Second Circuit has explained, "The equitable power conferred ... by Section 105(a) is the power to exercise equity in carrying out the *provisions* of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing.  This language suggests that an exercise of section 105 power be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective."  *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 91-92 (2d Cir. 2003) (italics in original, internal quotation marks and citations omitted).  In other words, Section 105 does not even expand the *bankruptcy* related powers of a bankruptcy court, let alone confer authority to make decisions in non-bankruptcy matters like this one.

[6]   Kodak asserts that Apple previously took the position that its assertions are not a question of federal patent law.  (Dkt. No. 1184, Motion at 23-24.)  Kodak neglects to mention that the Western District of New York ruled against Apple on this point, finding that Apple's assertions with respect to the '218 patent *are* related to patent issues pending at the ITC, in connection with accepting Kodak's position that the stay of district court litigation should not be lifted until final resolution of the ITC investigation.  In any case, Apple's previous motion addressed only Apple's state law causes of action, and did not involve correction of inventorship under federal patent law, which Apple has not had an opportunity to assert due to the automatic stay and ITC stay, which Kodak has insisted must remain in place.

the Federal Circuit has noted that "[t]he line between actual contributions to conception and the remaining, more prosaic contributions to the inventive process that do not render the contributor a co-inventor is sometimes a difficult one to draw." *Id.* at 1359.

The "difficult" task of assessing technical contributions for inventorship purposes will also require interpretation of federal patent law regarding conception. *See, e.g., Burroughs Wellcome Co. v. Barr Labs., Inc.,* 40 F.3d 1223, 1227-28 (Fed. Cir. 1994) (explaining that "[c]onception is the touchstone of inventorship, the completion of the mental part of invention"). This inquiry further requires evaluating whether the contribution in question is "insignificant in quality, when that contribution is measured against the dimension of the full invention." *Eli Lilly,* 376 F.3d at 1359. These complex legal standards will need to be interpreted and applied in view of a technical analysis of multiple claims from the ten patents at issue as well as documentary evidence of technology developed by Apple.

Moreover, the federal law inventorship analysis will require defining the patent scope through claim construction. *Id.* at 1360 (explaining that an "inventorship analysis, like an infringement or invalidity analysis, begins as a first step with a construction of each asserted claim to determine the subject matter encompassed thereby"). Claim construction typically involves a detailed review of extensive technical subject matter from the patent specification, patent prosecution history, and potentially extrinsic sources—under a long line of Federal Circuit precedent regarding relevant legal principles. *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1315-17 (Fed. Cir. 2005) (en banc). These complex issues of federal law implicate mandatory withdrawal. *In re Singer Co.,* 2002 WL 243779 at *3 ("claim construction, and infringement analysis" constituted "substantial and material consideration of patent law" requiring mandatory withdrawal).

14

Claim construction under federal patent law will similarly be required for Apple's state law assertions. For example, Apple's breach of contract counter-claim pending in the Western District of New York is based upon specific contractual provisions regarding the relationship of particular patents to technology disclosed to Kodak by Apple. (Ex. 11, 8/25/10 Apple Complaint, ¶ 24-25.) Assessing the relationship between subject matter of each of the patents and the technology disclosed by Apple will require a determination of the scope of the relevant patents through claim construction. While the '218 patent has already been subject to claim construction analysis (which may still need to be revisited) in the ITC investigation, the parties have not yet had an opportunity to address claim construction issues for the other nine patents.

A further issue of federal law arises in connection with Kodak's argument that Apple's federal and state assertions are time-barred by laches and statute of limitations, respectively. In particular, Kodak argues that Apple was allegedly on "constructive" notice from the time of issuance of these patents. (Dkt. No. 1184, Kodak Mot. at 16-17, 21.) The Eastern District of New York has noted that "the applicability of the principle of constructive notice of a patent, if it exists at all, is inextricably intertwined with the specific policy objectives fundamental to the underlying substantive federal patent law." *St. John's Univ. v. Bolton,* 757 F. Supp. 2d 144, 190 (E.D.N.Y. 2010). Kodak's "constructive notice" argument has been squarely rejected by the Federal Circuit. *Advanced Cardiovascular Sys. v. Scimed Life Sys., Inc.,* 988 F.2d 1157, 1162 (Fed. Cir. 1993) ("measuring [] delay from the date of issuance of the patent, in the absence of proof that [claimant] knew or should have known that the patent had issued and that he was omitted as a joint inventor" is erroneous as a matter of law). Nevertheless, to the extent Kodak apparently intends to pursue this discredited argument, additional complex issues of federal law are implicated.

**B.    Permissive Withdrawal Is Warranted Because The Bankruptcy Court Cannot Adjudicate This Matter**

Permissive withdrawal is also called for, because the Bankruptcy Court will not be able to render a final judgment on the merits of the dispute between Kodak and Apple. Therefore, it would be most efficient for the District Court to hear the matter from the beginning.

**1.    This Is A Non-Core Matter**

As discussed above, a core matter is one that could only arise in a bankruptcy. *See, e.g., In re Leco Enterprises, Inc.,* 144 B.R. at 249. The dispute that Kodak wants the Bankruptcy Court to resolve arises under federal patent law and state law, and portions of this dispute were already pending nearly two years before Kodak's bankruptcy. As litigation relating to these issues began well before Kodak's bankruptcy and all relevant events occurred long before then, this dispute arose outside the bankruptcy context and is inherently non-core. *E.g., Fairfield Sentry,* 458 B.R. at 685 (claims that "are independent of bankruptcy and involve facts wholly antecedent to the bankruptcy" are not core); *Little Rest Twelve,* 458 B.R. at 55 (lawsuits filed years before bankruptcy were not core proceedings).

The only link between parties' the patent dispute and Kodak's bankruptcy is that, if Kodak prevails, the patents may fetch a higher price and the estate may receive more money. This does not confer "core" status on a lawsuit, especially one brought by the debtor against a party that has not filed a claim in the bankruptcy. *See McCrory,* 160 B.R. at 506 ("While McCrory obviously seeks to prevail in the adversary proceeding in order to reorganize, it also seeks to cancel [defendant's] trademarks and enjoin defendant from protecting its registered marks. As a result, the proceeding is not one which could arise only in the context of a bankruptcy case."); *Little Rest Twelve,* 458 B.R. at 55 (action between debtor and non-creditor is non-core where sole connection to bankruptcy is that "determination of the action would affect

the ultimate size of the estate."); *In re Best Prods. Co.,* 68 F.3d at 32 (contrasting dispute over "priority rights of creditors who have filed claims against the estate" with "a proceeding that simply seeks to augment the estate"). Indeed, the Bankruptcy Code's definition of "core" specifically excludes "orders approving the sale of property … resulting from claims brought by the estate against persons who have not filed claims against the estate." 28 U.S.C. 157(b)(2)(n).

In sum, a dispute that has been pending for years prior to Kodak's bankruptcy filing is not and cannot be dressed up as "core" to suit Kodak's purposes. Because this dispute is a non-core proceeding, the most the Bankruptcy Court could do with respect to Kodak's "motion" is to submit proposed findings of fact and conclusions of law to the District Court. 28 U.S.C. § 157(c)(1). Only the District Court can enter a final order or judgment on the matter, and then only after considering the bankruptcy judge's proposed findings and conclusions and reviewing *de novo* those matters to which any party may timely and specifically object. *Id.* As discussed below, these limitations on the Bankruptcy Court's power weigh in favor of withdrawal now.

### 2.     This Matter Relates To Private Rights

Kodak's motion seeks to impact core defenses asserted by Apple in currently-pending patent litigation brought by Kodak. These are exactly the type of "private rights" actions that the Supreme Court forbids bankruptcy courts from ruling on:

> [T]he restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case. The former may well be a "public right," but the latter obviously is not.

*Northern Pipeline,* 458 U.S. at 71; *see also Granfinanciera,* 492 U.S. at 55 (claim to recover fraudulent conveyance was "more accurately characterized as a private rather than a public right"); *Stern,* 131 S. Ct. 2594 (tortious interference claim raised issue of private right).

The fact that a win for Kodak might enrich the bankruptcy estate does not change the private nature of the rights being asserted by Apple.  *See, e.g., In re Coudert Bros.,* 2011 WL 5593147 at *7; *Northern Pipeline,* 458 U.S. at 72.  Because Apple's assertions depend on private rights originating in non-bankruptcy law, the Bankruptcy Court cannot issue final judgments on them.  And because this limitation on the Bankruptcy Court's power is constitutional, it would prevent the Bankruptcy Court from ruling on a final basis on Kodak's motion even if this dispute was held to be a "core" proceeding under 28 U.S.C. § 157.  As the matter is not "core," and because Kodak's "motion" seeks to alter Apple's intellectual property rights under both federal patent law and state law, permissive withdrawal would be appropriate even if withdrawal were not mandatory (which, as described above, it is).

### C.     Both Apple And Kodak Have Legal Claims On Which Apple Is Entitled To Trial By Jury

An additional, independent basis for withdrawal is that the Bankruptcy Court cannot conduct a jury trial on Apple's assertions of rights in the patents at issue.  Several of Apple's assertions against Kodak, including the contract counterclaim and defense in the Western District of New York litigation, are inherently legal and seek the legal remedy of money damages.  *Brown*, 250 F.3d at 126; *Dairy Queen,* 396 U.S. at 476-77.  Apple is therefore entitled to a jury trial.  *Granfinanciera*, 492 U.S. at 42.  The Bankruptcy Court cannot conduct a jury trial without consent of the parties.  28 U.S.C. § 157(e); *In re Orion,* 4 F.3d at 1101; *In re Levine,* No. 11 Civ. 9101 (PAE), 2012 WL 310944, *3 (S.D.N.Y. Feb. 1, 2012).  Apple does not consent to a jury trial by the Bankruptcy Court.  Therefore, withdrawal is required.

### D.     Efficiency, Judicial Economy, And Prevention Of Forum Shopping Require Immediate Withdrawal

Kodak is not merely trying to destroy Apple's intellectual property rights through an artificially-truncated procedure—it is also engaging in forum shopping.  Kodak previously

18

resisted Apple's attempts to litigate the parties' patent-related disputes in any forum other than the Western District of New York.  (Ex. 16, 11/15/10 Kodak Mot.)  Yet, several months ago, Kodak opposed Apple's motion to lift the automatic bankruptcy stay to allow the litigation to proceed in an appropriate fashion that preserves the parties' rights.  Now Kodak seeks instead to have the Bankruptcy Court resolve this complex intellectual property dispute by way of a "motion."  Kodak presumably believes that the Bankruptcy Court will be sympathetic to an argument (express or implied) that Apple's interest in the disputed patents should be sacrificed to the demands of Kodak's potential, future, sale process.  And in any event, the Bankruptcy Court would have little opportunity to scrutinize Kodak's claims to the disputed patents because Kodak filed its motion scarcely a month before its deadline to file a motion for approval of bidding procedures that will govern the sale process for these patents.

These considerations weigh against deferring withdrawal until some later point in time. Kodak did not file an adversary proceeding against Apple, which could have entailed a complaint, answer, discovery and motions before advancing to the point of trial.  The motion filed by Kodak apparently contemplates nothing more than a response brief and perhaps an oral argument to decide several causes of action for at least ten different patents.  As a result of the procedure chosen by Kodak, there is no efficiency in leaving this case in the Bankruptcy Court because no appropriate pre-trial proceedings are contemplated.  Therefore, withdrawal must happen now.

Finally, because the issues in this case are complex, it would be most efficient to have a single district judge manage pretrial proceedings, conduct a trial, and issue a final judgment. Even if the Bankruptcy Court were to conduct non-jury portions of this case itself, the District Court would have to undertake a significant amount of work to understand and evaluate the

Bankruptcy Court's proposed findings and conclusions.  Moreover, because the Bankruptcy Court has conducted no substantive proceedings on the parties' patent-related disputes, the bankruptcy judge has no particular familiarity with the issues and there are no efforts on his part that would go to waste if the District Court were to withdraw the reference now.

## CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court withdraw the reference with respect to Kodak's motion and any related litigation.


Date:   June 1, 2012                        Respectfully submitted,


                                            */s/ Brian S. Lennon*
                                            James H.M. Sprayregen P.C.
                                            Gregory S. Arovas, P.C.
                                            Paul M. Basta
                                            Brian S. Lennon
                                            KIRKLAND & ELLIS LLP
                                            601 Lexington Avenue
                                            New York, New York  10022
                                            Telephone:     (212) 446-4800
                                            Facsimile:     (212) 446-4900

                                            - and -

                                            David R. Seligman, P.C.
                                            Marcus E. Sernel, P.C.
                                            KIRKLAND & ELLIS LLP
                                            300 North LaSalle
                                            Chicago, Illinois 60654
                                            Telephone:     (312) 862-2000
                                            Facsimile:     (312) 862-2200

                                            *Counsel for Apple Inc.*